IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:22-cv-00120-MR

| | |
|---|---|
| RICARDO EDWIN LANIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| CALEB WYCOFF, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendants Caleb Wycoff and Antonio Soriano's Motion for Summary Judgment [Doc. 44]. Also pending is the Defendants' Motion to Strike the Plaintiff's Surreply [Doc. 50].

**I.  BACKGROUND**

The Plaintiff Ricardo Edwin Lanier, proceeding pro se, filed this action while he was a pretrial detainee at the Henderson County Detention Center ("HCDC") pursuant to 42 U.S.C. § 1983.[1] The verified Complaint passed initial review on a retaliation claim against FNU Stone, a detention officer; an

---

[1] The Plaintiff filed this action while he was being held at HCDC. He was transferred to the North Carolina Department of Adult Corrections ("NCDAC") on November 18, 2022, and he was released to supervision on January 20, 2023. See https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0585176&searchLastName=lanier&searchFirstName=ricardo&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (last accessed Aug. 23, 2023); Fed. R. Evid. 201.

excessive force claim against Caleb Wycoff, a deputy sheriff; and a failure to intervene claim against Antonio Soriano, a detention officer. [Doc. 1: Complaint; Doc. 1-1: Complaint Attach.; Doc. 21: Order on Initial Review]. Defendant Stone was dismissed without prejudice for lack of service. [Doc. 42: Order]. The Plaintiff seeks compensatory and punitive damages. [Doc. 1-1 at 1, 8-9].

Defendants Wycoff and Soriano have asserted counterclaims against the Plaintiff for battery. [Doc. 38: Answer and Counterclaim]. They seek general and punitive damages, costs, a jury trial, and other relief that the Court deems just and proper. [Id.].

Defendants Wycoff and Soriano filed the instant Motion for Summary Judgment. [Doc. 44: MSJ]. They stipulate to the dismissal of all counterclaims, if summary judgment is granted. [Doc. 45: MSJ Memo. at 2]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 47: Roseboro Order]. The Plaintiff filed an unverified Response.[2] [Doc. 47: MSJ Response]. The

---

[2] Titled "Plaintiff's Opposition to Defendant's Motion for Summary Judgment."

Defendants filed a Reply [Doc. 48: MSJ] and the Plaintiff' filed a Surreply[3] [Doc. 49: Surreply], which the Defendants have moved to strike[4] [Doc. 50: Motion to Strike]. This matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

---

[3] Titled "Opposition to Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment."

[4] The Motion to Strike will be granted because the unauthorized Surreply violates the Court's Local Rules. See LCvR 7.1(e). Even if the Court were to consider the unverified Surreply, such would have no effect on the outcome of this case.

3

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

4

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The parties' forecasts of evidence construed in the light most favorable to the Plaintiff show the following, which is undisputed except as otherwise noted.

On January 11, 2022 and approximately 12:00 p.m., Officer Soriano popped open the Plaintiff's cell door for meal tray collection. [Doc. 45-3: Soriano Decl. at ¶ 4; Doc. 45-2: Wycoff Decl. at ¶ 3]. Rather than simply placing his empty tray outside the cell door for collection, the Plaintiff exited his cell, walked across the pod, and sat on top of the table near the pod

5

entrance. [Doc. 1-1: Compl. Attach. at 4; Doc. 45-3: Soriano Decl. at ¶ 4; Doc. 45-2: Wycoff Decl. at ¶ 3]. The Plaintiff did this to gain the attention of a senior officer to discuss the return of some legal documents. [Doc. 1-1: Compl. Attach. at 4].

Officer Wycoff decided to go see if he could talk the Plaintiff into returning to his cell; Officers Soriano and Edwards accompanied him as backup because the Plaintiff "is known to assault officers." [Doc. 45-2: Wycoff Decl. at ¶ 5]. Officers Wycoff, Soriano, and Edwards entered the pod to ask the Plaintiff what was going on. [Doc. 1-1: Compl. Attach. at 4]. The Plaintiff refused to return to his cell and asked to speak to a supervisor. [Doc. 1-1: Compl. Attach. at 4; Doc. 45-2: Wycoff Decl. at ¶ 7].

Wycoff "stated in a threating 'volatile' aggressive demeanor, that if Plaintiff didn't go to his cell that he'd punch the Plaintiff and make Plaintiff go."[5] [Doc. 1-1: Compl. Attach. at 4]. The Plaintiff "respectfully asked again" to speak to a higher officer because the Plaintiff knew that no force could be used against him while he was sitting still, and that the Officers would be

---

[5] Officer Wycoff claims that he repeatedly told Plaintiff to return to his cell, and Plaintiff responded "I am not going back to my cell and if you lay your hand on me then I have a right to defend myself." [Doc. 45-2: Wycoff Decl. at ¶ 8; see Doc. 45-3: Soriano Decl. at ¶ 7].

required to summon a higher official.[6] [Doc. 1-1: Compl. Attach. at 4]. Officer Wycoff showed the Plaintiff a closed fist and attempted to hit him.[7] [Doc. 1-1: Compl. Attach. at 4]. The Plaintiff stood up to block Officer Wycoff's attempt to hit him, and Wycoff missed.[8] [Doc. 1-1: Compl. Attach. at 5]. Officer Soriano then attempted to grab the Plaintiff so that Wycoff could hit him, and Wycoff again attempted to hit Plaintiff with a closed fist.[9] [Doc. 1-1: Compl. Attach. at 5]. Officer Wycoff "made it seem as if the Plaintiff was resisting so if he was able to actually hit or strike the Plaintiff it would be justified." Doc. 1-1: Compl. Attach. at 5-6].

The Plaintiff took a "fighting stance." [Doc. 45-4: Edwards Decl. at ¶ 6]. Officer Wycoff then used his taser on the Plaintiff, causing Plaintiff to fall to the ground. [Doc. 1-1: Compl. Attach. at 6; Doc. 45-2: Wycoff Decl. at ¶ 12; Doc. 54-3: Soriano Decl. at ¶¶ 8-9]. Wycoff tased the Plaintiff for a second time while the Plaintiff was on the ground, not resisting, and immobilized from

---

[6] According to the Defendants, the Plaintiff became increasingly loud and aggressive. [Doc. 45-3: Soriano Decl. at ¶ 7].

[7] Officer Wycoff states that he told the Plaintiff that the officers "would lay [their] hands on him and put him back in his cell" if he failed to comply. [Doc. 45-2: Wycoff Decl. at ¶ 8].

[8] Officer Wycoff states that he tried to place his hand on the Plaintiff's shoulder to guide him off of the table, and back to his cell. [Doc. 45-2: Wycoff Decl. at ¶ 8; see Doc. 45-3: Soriano Decl. at ¶ 8 (Wycoff grabbed the Plaintiff's arm; the Plaintiff stood up off the table and jerked away)].

[9] Officer Soriano states that he attempted to grab the Plaintiff's wrist, but that the Plaintiff broke free while swinging his arms and backing away. [Doc. 45-3: Soriano Decl. at ¶ 8].

7

the initial taser discharge.[10] [Doc. 1-1: Compl. Attach. at 6]. He was handcuffed and escorted away. [Doc. 45-2: Wycoff Decl. at ¶ 15].

Officer Wycoff's finger was broken, and Officer Soriano's face and arm were cut in the incident. [Doc. 45-2: Wycoff Decl. at ¶ 16; Doc. 45-3: Soriano Decl. at ¶ 12; see Doc. 11-1 at DSC 426-40 (DVD photographs of Officer Soriano's injuries); see also id. at DSC 441-60 (DVD photographs of the Plaintiff, revealing no apparent injuries except for two small gouges on the knuckles of his left hand)].

The Plaintiff was charged in Henderson County Superior Court with two counts of assault inflicting serious injury on the employee of a detention facility, Case Nos. 22CRS050531, -532. [See Doc. 1-2 at 3-4 (Arrest Warrants); Doc. 45-6: MSJ Ex at 2-3 (Indictments); see also Doc. 45-7: MSJ Ex at 23 (Plaintiff's discovery response)]. The Plaintiff entered an Alford[11] plea in both cases and he was sentenced to between 10 and 21 months' imprisonment. [Doc. 45-6: MSJ Ex at 4-5 (Judgment)].

---

[10] According to the Officers, the Plaintiff's continued resistance required a second cycle of the taser deployed to the Plaintiff's thigh; he then stopped resisting. [Doc. 45-2: Wycoff Decl. at ¶¶ 12-13; Doc. 45-3: Soriano Decl. at ¶ 9; Doc. 45-4: Edwards Decl. at ¶ 7].

[11] North Carolina v. Alford, 400 U.S. 25 (1970).

A video exhibit [Doc. 11-1: Manually Filed Video Exhibit] containing footage from the housing pod that shows the following events:

| | |
|---|---|
| 12:08:42 | During meal tray collection, the Plaintiff walks across the dayroom and sits on top of a table. |
| 12:09:20 | The Plaintiff gestures and appears to converse with someone off-camera, and remains seated on the table. |
| 12:09:29 | Officers Wycoff, Soriano, and Edwards enter the pod, approach the Plaintiff, and converse with him while the Plaintiff remains seated on the table. |
| 12:09:56 | Officer Wycoff steps towards the Plaintiff and reaches his open right hand toward Plaintiff's shoulder. The Plaintiff suddenly begins swinging his arms at Wycoff, jumps off the table, and swings and lunges as officers attempt to restrain him. |
| 12:10:01 | The Plaintiff breaks away from the officers and assumes an aggressive stance. |
| 12:10:02 | Officer Wycoff deploys his taser and Plaintiff falls to the floor. |
| 12:10:06 | The officers attempt to restrain the Plaintiff as he continues to struggle on the floor. |
| 12:10:15 | Officer Wycoff appears to apply the taser to Plaintiff's leg while Officers Soriano and Edwards attempt to control Plaintiff's arms. |
| 12:10:16 | Officers Soriano and Edwards bring the Plaintiff's arms behind his back. |
| 12:10:46 | Officer Wycoff exits the pod with an obviously-injured hand. |
| 12:12:00 | The Plaintiff, in restraints, is escorted off the pod. |

## IV. DISCUSSION

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396).

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a

reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall, 302 F.3d at 204.

Here, the Plaintiff has failed to present a forecast of evidence from which a reasonable jury could conclude that any Defendant used excessive force or failed to intervene in order to prevent the use of excessive force. The Plaintiff's forecast of evidence consists only of the allegations in his verified Complaint that Defendant Wycoff used excessive force and that Defendant Soriano failed to intervene. This forecast of evidence, however, is "so utterly discredited by the record that no reasonable jury could ... believe[ ] him." Scott, 550 U.S. at 380.

The video footage demonstrates that: the Defendants approached the Plaintiff and conversed with him; Wycoff reached towards Plaintiff with an open hand, not a fist; the Plaintiff reacted violently by swinging his arms at Wycoff, jumping off the table, and continuing to swing and lunge at the officers; the Plaintiff remained standing and resisting until the taser was deployed; the Plaintiff then fell to the ground and continued to resist until the taser was deployed for a second time. The video conclusively refutes the Plaintiff's claims that Wycoff threatened him with a closed fist, or that any officer used gratuitous force or failed to intervene in the same. Instead, it demonstrates that the Defendants' physical contact with the Plaintiff was

objectively reasonable and necessary in light of the Plaintiff's escalating resistance. Accordingly, the Court concludes that the Defendants are entitled to judgment as a matter of law on the Plaintiff's excessive force and failure to intervene claims.[12]

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted). Here, because Plaintiff has not forecast evidence that the

---

[12] The Court declines to address the Defendants' alternate argument that the Plaintiff's excessive force claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994).

Defendants violated a constitutional right, the Defendants are also entitled qualified immunity, and summary judgment is granted on this ground as well.

Because the Defendants' Motion for Summary Judgment is being granted, the Defendants' counterclaims will be dismissed pursuant to their stipulation. [See 45: MSJ Memo. at 2].

The Court further concludes, after carefully reviewing the Plaintiff's allegations and the parties' forecasts of evidence, that the Plaintiff's claims are frivolous and malicious. See 28 U.S.C. §§ 1915(e)(2)(B)(i), 1915A(b)(1).

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion to Strike the Plaintiff's Surreply, and grants the Defendants' Motion for Summary Judgment. The Defendants' counterclaims are dismissed pursuant to their stipulation, and this action is dismissed with prejudice.

### ORDER

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion to Strike [Doc. 50] is **GRANTED**, and the Plaintiff's Surreply [Doc. 49] is **STRICKEN**.

2. Defendants' Motion for Summary Judgment [Doc. 44] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE** as frivolous and malicious.

3. The Defendants' counterclaims are **DISMISSED**.

The Clerk is respectfully directed to terminate this action.

**IT IS SO ORDERED.**

Signed: November 7, 2023

Martin Reidinger
Chief United States District Judge